## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NEW ORLEANS & GULF COAST**<br>**RAILWAY COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **No. 04-2924**<br>**C/W:  06-0062**<br>**REF:  04-2924, 06-0062** |
| **ANGEL MARINOVICH BARROIS,** *et al.* | **SECTION:  I/1** |

### ORDER AND REASONS

Before the Court is a motion to dismiss filed on behalf of defendants Angel Marinovich Barrios and Darren J. Barrios, Becky Hingle Kaliszeski and Jason C. Kaliszeski, Tracy Windham Miller and Brady J. Miller, Jerry Rayborn, Patricia Lerille Tillotson and Lawrence Joseph Tillotson, and Carol Plaisane Gainey.[1]  Also before the Court is a motion to dismiss filed by defendant Furniture Mart - Real Estate Holdings, L.L.C.[2] and a motion to dismiss filed by defendants Dawn P. Treadway and John W. Treadway, Betty St. Germain Nelson and Kevin A.

---

[1]Rec. Doc. No. 129.

[2]Rec. Doc. No. 162.

1

Nelson, Robin Meyer Woodall and Carl Steven Woodall, Ann Frost Koen and Earl Herman Koen, Jr., and Martha Riddle.[3]  Defendants' motions contest the jurisdiction of this Court and the sufficiency of plaintiff's claims.  Plaintiff, New Orleans & Gulf Coast Railway Company, is also requesting that the Court reconsider its previous dismissal of plaintiff's claims pursuant to the Federal Railroad Safety Act or, in the alternative, grant plaintiff a new trial.[4]  Because these motions present common issues of law, the Court has considered them simultaneously.  For the following reasons,  plaintiff's motion to reconsider is **DENIED** and defendants' motions are **GRANTED**.

### *BACKGROUND*

Plaintiff, New Orleans & Gulf Coast Railway Company ("NOGCR" or "plaintiff"), is a Delaware corporation with a local office in Jefferson Parish, Louisiana, and its headquarters in Fort Worth, Texas.  NOGCR is a subsidiary of Rio Grande Pacific Corporation, a company incorporated in Texas.[5]  On October 26, 2004, NOGCR filed a complaint for injunctive and declaratory relief against defendants Angel Marinovich Barrios and Darren J. Barrios (collectively, "Barrioses").[6]  On May 9, 2005, plaintiff amended its complaint to add claims against defendants Becky Hingle Kaliszeski and Jason C. Kaliszeski (collectivley, "Kaliszeskis"), Tracy Windham Miller and Brady J. Miller (collectively, "Millers"), Betty St. Germain Nelson and Kevin A. Nelson (collectively, "Nelsons"), Jerry Rayborn, and Patricia

---

[3]Rec. Doc. No. 194.

[4]Rec. Doc. No. 158.

[5]Rec. Doc. No. 177, p. 36.

[6]Rec. Doc. No. 1.

Lerille Tillotson and Lawrence Joseph Tillotson (collectively, the "Tillotsons").  In both complaints, plaintiff contends that a federal question existed and that subject matter jurisdiction was proper pursuant to 28 U.S.C. § 1331.

On March 9, 2006, the Court granted plaintiff permission to file a second amended complaint, naming as additional defendants Leonard Jourdan, Jr., Tammy L. Kennair and Bruce Kennair (collectively, "Kennairs"), Robin Meyer Woodall and Carl Steven Woodall (collectively, "Woodalls"), Ann Frost Koen and Earl Herman Koen, Jr. (collectively, "Koens"), Martha Riddle, Dawn P. Treadway and John W. Treadway (collectively, "Treadways), Carol Plaisane Gainey, Winnie L. Soule, Marie Verdin Soulet and Rene Soulet (collectively, "Soulets"), Sandra R. Rabalias, and Furniture Mart - Real Estate Holdings, L.L.C. ("Furniture Mart").[7]  In the second amended complaint, plaintiff also alleges that this Court has diversity jurisdiction over these matters pursuant to 28 U.S.C. § 1332.

In 1999, NOGCR acquired New Orleans Lower Coast Railroad, Inc., which gave it control of a rail line running parallel to Louisiana State Highway 23 ("Highway 23").  NOGCR requires landowners to obtain a permit for each private grade crossing[8] they wish to install and to assume the expense of insuring that the crossing meets federal safety regulations.  According to plaintiff's complaint, defendants have installed crossings over their railroad right-of-way without proper permits; plaintiff complains that these improper crossings impose a severe economic burden because NOGCR is forced to repair damage to the roadbed and track of its railroad

_____

[7]Rec. Doc. No. 106.

[8]49 U.S.C. § 20153(a)(1) defines a grade crossing as "any street or highway crossing over a line of railroad at grade."

3

caused by these crossings.[9]  Plaintiff also notes the danger associated with such crossings, as well as the Federal Department of Transportation's mandate to reduce grade crossings.[10] Plaintiff alleges that defendants refuse to obtain permits for their crossings and refuse to shoulder any of the associated construction and maintenance costs, which impairs NOGCR's ability to provide adequate service to its customers.[11]  Plaintiff requests a permanent injunction and declaratory judgment to prevent defendants' interference with and trespass on its rail line.[12]

On January 3, 2006, Rayborn--a defendant in NOGCR's earlier action--filed an action against NOGCR in the 25th Judicial District Court for the Parish of Plaquemines, Louisiana, seeking a temporary restraining order, preliminary injunction, and permanent injunction to prevent plaintiff from interfering with the crossings located on Rayborn's property.[13]  On that date, Judge William Roe granted Rayborn's motion for an *ex parte* temporary restraining order.[14] On January 6, 2006, NOGCR removed the Rayborn case to federal court.  The preliminary injunction hearing following the imposition of the state court temporary restraining order was continued by this Court without date and with the consent of the parties.[15]  The status quo imposed by the temporary restraining order remains in effect.  On January 19, 2006, the Court

---

[9]Rec. Doc. No. 106, p. 5 ¶11.

[10]Rec. Doc. No. 106, pp. 11-12.

[11]Rec. Doc. No. 106, p. 5 ¶13.

[12]Rec. Doc. No. 106, pp. 26-34.

[13]Civ. Action No.  06-62, Rec. Doc. No. 1-1, Ex. A, p. 8.

[14]Civ. Action No.  06-62, Rec. Doc. No. 1-1, p. 3.

[15]Civ. Action No. 06-62, Rec. Doc. No. 11.

consolidated the Rayborn case with NOGCR's earlier action.[16]

The Tillotsons, Kennairs, Barrioses, and Furniture Mart have all filed counterclaims against NOGCR.[17]  In addition, the Kennairs have filed a third-party complaint against First American Title Insurance ("First American") and NOGCR's liability insurer, Lexington Insurance Company ("Lexington").[18]  The Barrioses also filed a third-party complaint against Lexington, First American, and Jourdan.[19]

On March 30, 2006, the Court partially granted a motion to dismiss filed by the Nelsons and dismissed plaintiff's claims pursuant to the Federal Railroad Safety Act ("FRSA").[20]  On April 12, 2006, plaintiff filed a motion requesting that the Court reconsider this dismissal or, in the alternative, grant plaintiff a new trial.[21]  Since then, a barrage of motions from all parties has peppered the Court.

## *LAW AND ANALYSIS*

### I.  Motions to Dismiss

#### A.  Standard of Law

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of an action where the court finds that it does not have subject matter jurisdiction.  Subsection (6) of the same rule provides for dismissal for the failure of a party to state a claim for which relief can

---

[16]Rec. Doc. No. 86.

[17]Rec. Doc. Nos. 173, 189, 206.

[18]Rec. Doc. No. 189.

[19]Rec. Doc. No. 103.

[20]Rec. Doc. No. 128.

[21]Rec. Doc. No. 158.

be granted.  Where "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (holding that where there are grounds for dismissal under Rule 12(b)(1) for lack of jurisdiction and under Rule 12(b)(6) for failure to state a claim on which relief can be granted, the "court should dismiss only on the jurisdictional ground . . . without reaching the question of failure to state a claim")).  This approach "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Ramming*, 281 F.3d at 161.  Where dismissal under Rule 12(b)(1) is appropriate, the plaintiff is not precluded from seeking relief in another forum with proper jurisdiction because no determination on the merits has been made. *See Hitt*, 561 F.2d at 608.

    1. *Lack of Subject Matter Jurisdiction*

    "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted).  "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).  Where, as here, a defendant has attacked the court's subject matter jurisdiction, the plaintiff has the burden of "proving by a preponderance of the evidence that the trial court does" possess the requisite jurisdiction. *Patterson v. Weinberger*, 644 F.2d 521, 523

6

(5th Cir. 1981); *see also Ramming*, 281 F.3d at 161 (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).  "Challenges to subject-matter jurisdiction can of course be raised at any time prior to final judgment."  *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571, 124 S. Ct. 1920, 1924, 158 L. Ed. 2d 866 (2004) (citing *Capron v. Van Noorden*, 6 U.S. 126, 2 Cranch 126, 2 L. Ed. 229 (1804)).

   *2.  Failure to State a Claim*

   Rule 12(b)(6) of the Federal Rules of Civil Procedure provides a defense where a party has failed to state a claim upon which relief can be granted.  A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted.  *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  In assessing the complaint, a court must accept all well-pleaded facts in the complaint as true and liberally construe all factual allegations in the light most favorable to the plaintiff.  *Spivey,* 197 F.3d at 774; *Lowry v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

   "However, 'in order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations . . . .'" *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) (quoting *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989)).

"'[C]onclusory allegations and unwarranted deductions of fact are not admitted as true' by a motion to dismiss." *Id.* (quoting *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).  "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (internal quotation and citation omitted).

**B.  Subject Matter Jurisdiction**

In their motions, several defendants argue that this Court lacks subject matter jurisdiction over NOGCR's action.  Defendants aver that diversity jurisdiction does not exist because plaintiff's claims do not meet the amount in controversy requirement and because diversity of citizenship is lacking; alternately, they contend  that plaintiff's claims do not raise a federal question.

*1.  Diversity Jurisdiction*

Challenging plaintiff's assertion that this Court has diversity jurisdiction over the matter pursuant to 28 U.S.C. § 1332, defendants argue that plaintiff has not shown that there is a sufficient amount in controversy or that diversity of citizenship exists.  Federal courts have original jurisdiction over cases between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332.

*i.  Amount in controversy*

Defendants contend that the amounts listed in plaintiff's complaint for the installation and maintenance of proper crossings, which allegedly total less than $40,000, are insufficient to

8

meet the amount in controversy requirement for diversity jurisdiction.  The Fifth Circuit has stated that, with regard to actions for equitable relief brought pursuant to a court's diversity jurisdiction, "'[t]he amount in controversy, in an action for declaratory or injunctive relief, is the value of the right to be protected or the extent of the injury to be prevented.'"  *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1252-53 (5th Cir. 1998) (quoting *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983)).  "In a declaratory judgment action, we measure the amount in controversy by the value of the 'object of the litigation.' . . . The amount in controversy constitutes the pecuniary results that flow directly and with a fair degree of probability from the litigation itself, not from collateral sources."  *Smith Prod. Co. v. Baldwin*, No. 96-1746, 1997 U.S. App. LEXIS 1487, at *10-11 (7th Cir. Jan. 24, 1997) (internal citations omitted).

"'The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it.'"  *St. Paul*, 134 F.3d at 1253 (quoting *Gaitor v. Peninsular & Occidental Steamship Co.*, 287 F.2d 252, 253-54 (5th Cir. 1961)).  To defeat diversity jurisdiction on this ground, a movant must show to a "legal certainty" that the amount in controversy does not exceed $75,000.  *Id.* (citation omitted).  However, "bare allegations [of jurisdictional facts] have been held insufficient to invest a federal court with jurisdiction."  *Id.* (quoting *Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Colom. v. Dow Quimica de Colom. S.A.*, 988 F.2d 559, 566 (5th Cir. 1993) (alteration in original).

Plaintiff contends that the "value to the railroad of its right to operate its railroad servitude free of defendants' exercise of crossings is worth far more than the combined costs of

the individual crossings."[22]  Plaintiff also notes that commercial users have paid $100,000 within

the last five years for crossing rights over plaintiff's railroad.[23]  Considering the substantial

property interest that plaintiff seeks to defend and the commercial value of the crossings, the

Court finds that defendants have not shown that it is a legal certainty that the amount involved in

this declaratory judgment action will not exceed $75,000.  The Court's inquiry into diversity

jurisdiction, however, does not end with this conclusion.

### ii.  Diversity of Citizenship

Whether diversity jurisdiction exists is also determined by examining the citizenship of

the parties at the time the lawsuit was filed.  *Smith v. Sperling*, 354 U.S. 91, 93, 77 S. Ct. 1112,

1114, 1 L. Ed. 2d 1205 n.1 (1957).  Section 1332(c) deems that a corporation is a citizen "of any

State by which it has been incorporated and of the State where it has its principal place of

business."  28 U.S.C. § 1332(c); *see also Harris v. Black Clawson Co.*, 961 F.2d 547, 549 (5th

Cir. 1992).  There appears to be no dispute that plaintiff is incorporated in Delaware.[24]

As plaintiff notes, the Fifth Circuit applies the "total activity" test to determine a

corporation's principal place of business.  *Teal Energy USA, Inc. v. GT, Inc.*, 369 F.3d 873, 876

(5th Cir. 2004) (citations omitted).  This test requires the Court to consider "two 'focal points:'

the location of the corporation's 'nerve center' and its 'place of activities.'"  *Id.*  In *Harris*, the

Fifth Circuit explained how these jurisdictional focal points are determined:

> The "nerve center" test is derived from the decision in *Scot Typewriter Co. v.*
> *Underwood Corp.*, 170 F. Supp. 862 (S.D.N.Y. 1959).  Under this test, a

---

[22]Rec. Doc. No. 177, p. 33.

[23]Rec. Doc. No. 177, p. 34 n.10.

[24]*See* Rec. Doc. No. 177, p. 32.

corporation's principal place of business is the place where the corporation's business is ultimately directed and controlled.  The "place of activities" test is derived from the decision in *Kelly v. United States Steel Corp.*, 284 F.2d 850 (3d Cir. 1960). Under this test, a corporation's principal place of business is the center of its production or service activities.  See 13B C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure, § 3625, at 621 (2d ed. 1984).

961 F.2d at 549.  The *Teal Energy* court discussed the significance of these two focal points:

Generally, 'when considering a corporation whose operations are far flung, the sole nerve center of that corporation is more significant in determining principal place of business . . ., *when a corporation has its sole operation in one state and executive offices in another, the place of activity is regarded as more significant* . . ., but when the activity of a corporation is passive and the "brain" of the corporation is in another state, the situs of the corporation's "brain" is given greater significance . . . .'

369 F.3d at 876 (quoting *J.A. Olson Co. v. City of Winona, Miss.*, 818 F.2d 401, 411 (5th Cir. 1987)) (emphasis added).  "[T]he principal place of business of a corporation with its corporate headquarters in one state and its single activity in another will generally be in the state of its operations . . . ."  *J.A. Olson Co.*, 818 F.2d at 409  (quoting *Lurie Co. v. Loew's San Francisco Hotel Corp.*, 315 F. Supp. 405 (N.D.Cal.1970)).

NOGCR's corporate headquarters, its "nerve center," is in Fort Worth, Texas.  Its shareholders, corporate parent, officers, and capital accounts are located there.[25]  The office in Fort Worth handles the company's decision-making and its negotiations with foreign customers.  NOGCR, however, conducts all of its activities in Louisiana.  NOCGR has a local office in Louisiana; its physical assets are located in Louisiana, and it is a member of several Louisiana organizations and associations.[26]  NOGCR conducts no activities outside of Louisiana.[27]

---

[25]Rec. Doc. No. 177, pp. 36-39.

[26]Rec. Doc. No. 129, Ex. A, p. 1, Ex. B, pp. 5-6.

[27]Rec. Doc. No. 129, Ex. B, p. 12.

Looking to the language in *Teal Energy*, the Court finds that plaintiff is a corporation that has its sole operation in one state and executive offices in another; accordingly, the place of activity is regarded as more significant, and the Court finds that plaintiff's principal place of business is in Louisiana.  Because complete diversity does not exist between the parties, the Court does not have jurisdiction over this case pursuant to 28 U.S.C. § 1332.

### 2. *Federal Question Jurisdiction*

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "[I]t is well settled that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law."  *Heimann v. Nat'l Elevator Indus. Pension Fund*, 187 F.3d 493, 499 (5th Cir. 1999); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429, 96 L. Ed. 2d 318 (1987) (stating that subject matter jurisdiction exists "when a federal question is presented on the face of the plaintiff's properly pleaded complaint").  "The 'well-pleaded complaint rule' is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts."  *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S. Ct. 1542, 1546, 95 L. Ed. 2d 55 (1987).

Ordinarily, jurisdiction is not defeated by the possibility that the allegations in a pleading fail to state a claim upon which a party could actually prevail.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 118 S. Ct. 1003, 1010, 140 L. Ed. 2d 210 (1998).  As the Court of Appeals for the Ninth Circuit summarized,

> [a]n appropriate allegation that a claim arises "under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, is sufficient to vest a federal district court with jurisdiction to determine whether or not the claim actually does so arise, and if it does, to decide the issue the claim presents. If the court determines the claim

12

> does not arise "under the Constitution, laws, or treaties of the United States" or if it
> determines the claim lacks merit, the plaintiff either is out of federal court or loses
> the case.

*Flowers v. First Hawaiian Bank*, 295 F.3d 966, 974 (9th Cir. 2002).  Plaintiff contends that its

claims will necessarily involve interpretation of the Commerce Clause of the United States

Constitution, the FRSA,[28] and the Interstate Commerce Commission Termination Act

("ICCTA") because of their preemptive effect on defendants' state law claims and defenses.[29]

Plaintiff's preemption claims, however, do not create a federal question because "a

federal court does not have original jurisdiction over a case in which the complaint . . . asserts

that federal law deprives the defendant of a defense he may raise."  *Franchise Tax Bd. v. Constr.

Laborers Vacation Trust*, 463 U.S. 1, 10, 103 S. Ct. 2841, 2846, 77 L. Ed. 2d 420 (1983)

(internal citations omitted); *see also Cook v. Georgetown Steel Corp.*, 770 F.2d 1272, 1275 (4th

Cir. 1985); *Powers v. S. Cent. United Food & Commercial Workers Unions*, 719 F.2d 760, 764

(5th Cir. 1983).  Plaintiff may not sue in federal court on the basis of the anticipated defense that

defendants may assert.

Nor does the Supremacy Clause of the United States Constitution provide a basis for

jurisdiction.[30]  Plaintiff argues that the FRSA, ICCTA, and Commerce Clause preempt

defendants' claims because these claims impermissibly subject NOGCR to state regulation that

conflicts with federal law.  The Court recognizes that the FRSA and the ICCTA may preempt

---

[28]Plaintiff's claims pursuant to the FRSA were previously dismissed by the Court.  *See* Rec. Doc. No. 158.

[29]Rec. Doc. No. 106, p. 2.

[30]"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.

13

conflicting state law.  *See CSX Transp. v. Easterwood*, 507 U.S. 658, 664, 113 S. Ct. 1732, 1737, 123 L. Ed. 2d 387 (1993); *PCI Transp. Inc. v. Fort Worth & Western R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).  "[A] person subject to a scheme of federal regulation may sue in federal court to enjoin application to him of conflicting state regulations, and a declaratory judgment action by the same person does not necessarily run afoul of the *Skelly Oil* [well-pleaded complaint] doctrine."  *Franchise Tax Bd.*, 463 U.S. at 20, 103 S. Ct. at 2852 n.20 (citations omitted).  Plaintiff has not shown, though, that it is subject to any conflicting scheme of state regulation.  Indeed, plaintiff has sued no state agency or official and has cited to no case in which complete preemption was applied against private defendants.  *See Colonial Penn Group, Inc. v. Colonial Deposit Co.*, 834 F.2d 229, 237 (1st Cir. 1987) ("Jurisdiction over actions for declarations of pre-emption can logically only be asserted where a state official is the defendant.").[31]  Plaintiff's bare allegations are insufficient to convince the Court of any conflicting scheme of state regulation; moreover, plaintiff has not sought relief against any defendants that can provide relief from such state regulation if it did so exist.

Because plaintiff's claims do not raise a federal question, and because diversity jurisdiction does not exist, plaintiff's preemption claims pursuant to the ICCTA and the Commerce Clause must be dismissed.

## C.  Commerce Clause Claim

While plaintiff unsuccessfully argues that the Commerce Clause preempts defendants'

---

[31]NOGCR claims that this language from *Colonial Penn* is inapplicable dicta.  Rec. Doc. No. 188, p. 8.  The First Circuit, however, relied on this holding to reject the plaintiff's argument that the court had jurisdiction over its attempt to preempt the defendant's state court action.  Plaintiff's contention that "the issue of availability of federal courts for plaintiffs' action for injunctive relief against private parties was not at issue" in *Colonial Penn* is incorrect. *See id.* at p. 9.

claims, NOGCR also appears to argue that the Commerce Clause provides a separate cause of action.  Several defendants have moved to dismiss these claims because they fail to state a legally cognizable claim.[32]

Plaintiff argues that it has claims for injunctive and declaratory relief that arise under the Commerce Clause, and it alleges that defendants' actions have violated the Commerce Clause in its amended complaint.[33]  The Commerce Clause, however, provides for injunctive relief against state action, and this provision of the Constitution does not provide a private right of action for relief against private individuals.  *See Washington v. U.S. Tennis Ass'n*, 290 F. Supp. 2d 323, 329 (E.D.N.Y. 2003) (quoting *Ghaznavi v. Days Inn of Am.*, No. 91-4520, 1993 U.S. Dist. LEXIS 11707, at *5 (S.D.N.Y. Aug. 20, 1993)); *City of Camden v. Beretta U.S.A. Corp.*, 81 F. Supp. 2d 541, 547 (D.N.J. 2000) ("Nor does the Commerce Clause give rise to a private right of action absent specific federal legislation.").  Accordingly, plaintiff's claims pursuant to the Commerce Clause are dismissed.[34]

## II.  Plaintiff's Motion for Reconsideration

Plaintiff's motion asks the Court to reconsider its order of March 30, 2006, granting in part the motion to dismiss filed by defendants, the Nelsons.  In that order, the Court dismissed

---

[32]*See* Rec. Doc. Nos. 162, 194.

[33]Rec. Doc. No. 177, p. 6; Rec. Doc. No. 106, p. 27.

[34]The Court also notes that, as Furniture Mart explains in its motion, the ICCTA does not provide plaintiff with a private right of remedy against these defendants either.  *But cf.* 49 U.S.C. §§ 14702(a) (permitting action brought by the Secretary of Transportation or the Surface Transportation Board), 14703 (permitting action by the Attorney General), 14704(a)(1) ("A person injured because a carrier . . . does not obey an order of the Secretary . . . may bring a civil action to enforce that order under this subsection."), 14706(a) (permitting action by rail carrier against another carrier for liability arising from receipts and bills of lading).

plaintiff's claims pursuant to the FRSA.[35]  The Federal Rules of Civil Procedure do not expressly

recognize motions for reconsideration.  *Bass v. U. S. Dep't of Agric.*, 211 F.3d 959, 962 (5th Cir.

2000).  A motion for reconsideration filed within ten days of the district court's judgment will be

recharacterized as a motion to alter or amend the judgment and construed pursuant to Rule 59(e)

of the Federal Rules of Civil Procedure.  *See id.* (citing *Hamilton Plaintiffs v. Williams Plaintiffs*,

147 F.3d 367, 371 n.10 (5th Cir. 1998)); *see also Blanchard & Co. v. Barrick Corp.*, No. 02-

3721, 2003 U.S. Dist. LEXIS 20076, at *3 n.1 (E.D. La. Nov. 3, 2003) (Berrigan, C.J.) ("A

motion filed pursuant to Rule 59(e) requires a filing within ten (10) business days of the

dispositive motion which the party seeks to have reconsidered . . . .").  This Court's previous

ruling was entered on March 30, 2006;[36] the instant motion to reconsider was filed on April 12,

2006.  According to Rule 4(a), plaintiff's motion falls within this time period and will be

analyzed pursuant to Rule 59(e).

A Rule 59(e) motion "calls into question the correctness of a judgment."  *In re

Transtexas Gas Corp.,* 303 F.3d 571, 581 (5th Cir. 2002).  It is not the proper vehicle for

rehashing evidence, legal theories, or arguments that could have been offered or raised before the

entry of judgment, *Simon v. United States,* 891 F.2d 1154, 1159 (5th Cir. 1990), but instead

"serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to

present newly discovered evidence."  *Waltman v. Int'l Paper Co.,* 875 F.2d 468, 473 (5th Cir.

1989) (internal quotations omitted).  A district court has "considerable discretion in deciding

whether to reopen a case in response to a motion for reconsideration arising under" Rule 59(e).

---

[35]Rec. Doc. No. 158.

[36]Rec. Doc. No. 128.

*Lavespere*, 910 F.2d at 174.  There are considerations that limit this discretion, however:  (1) the need to bring litigation to an end, and (2) the need to render just decisions on the basis of all the facts.  *Id.* (citations omitted).

Plaintiff correctly notes that, "[g]enerally, there are four grounds upon which a Rule 59(e) motion can be granted:  (1) to correct manifest errors of law or fact upon which judgment is based, (2) the availability of new evidence, (3) the need to prevent to prevent manifest injustice, or (4) an intervening change in controlling law."  *Peterson v. Cigna Group Ins.*, No. 99-2112, 2002 U.S. Dist. LEXIS 10400, at *4 (E.D. La. Jun. 5, 2002) (Duval, J.) (citations omitted).  Though not explicitly stated, plaintiff's motion appears to argue that its motion should be granted because of a manifest error in this Court's previous ruling.

Plaintiff argues that the Court erred in finding that defendants' alleged state law claims against NOGCR cannot be preempted by the FRSA and that the Court failed to fully consider the import of cases in which railroad companies successfully brought actions against state officials and agencies to preempt state laws and regulations that impermissibly infringed on the FRSA.  Plaintiff's arguments and citation to authority, however, do not suggest to this Court that its previous ruling was based on any manifest error of law or fact.

In its brief, plaintiff repeatedly invokes four cases in which the plaintiff railroad companies won injunctions prohibiting the application of state laws by citing to the preemption clause of the FRSA.  *See Union Pac. R.R. v. Cal. Pub. Util. Comm'n*, 346 F.3d 851 (9th Cir. 2003), *CSX Transp., Inc. v. City of Plymouth*, 283 F.3d 812 (6th Cir. 2002), *Mo. Pac. R.R. Co. v. R.R. Comm'n of Tex.*, 850 F.2d 264 (5th Cir. 1988) ("*MoPac II*");  *Mo. Pac. R.R. Co. v. R.R. Comm'n of Tex.*, 653 F. Supp. 617 (W.D. Tex. 1987) ("*MoPac I*").  These cases are inapposite.

17

In each, the plaintiff railroad companies sued state agencies and officials; in the instant case, however, plaintiff is suing private parties.  Despite the Court's discussion of this distinction with respect to *MoPac I* and *II* in its March 30, 2006, Order and Reasons, plaintiff has not cited any cases in its motion to reconsider in which a private railroad company has used FRSA preemption to enjoin the actions of private defendants based on state laws.  Nor has plaintiff made any Louisiana state agency or official a defendant in this case.

The Court's decision does not rest, as plaintiff appears to assert, on the fact that defendants' alleged defenses rely on state common law.[37]  The Court recognizes that state common law may impermissibly conflict with the FRSA.  *See Easterwood*, 507 U.S. at 664, 113 S. Ct. at 1737-38.  Instead, as stated above, the Court's concern is that plaintiff's attempt to apply FRSA preemption does not create federal jurisdiction.  Plaintiff's filings speak generally of defendants' claimed right of passage over plaintiff's railway; however, unlike cases in which railroad companies have used FRSA preemption defensively against state law claims, defendants' alleged state law claims are not before the Court.

FRSA preemption applies to state action.  The preemption clause in that statute provides that federal law may preempt "a law, regulation, or order related to railroad safety or security" that is adopted or enforced by the state.  49 U.S.C. § 20106.  In *MoPac I* and *II*, as well as other similar cases, the plaintiff railroad companies have used preemption offensively to successfully challenge these state actions directly by bringing actions against state agencies and their officials.  Jurisdiction existed because these plaintiffs were subject to state regulation and sought relief against state actors.

---

[37]*See* Rec. Doc. No. 158, Mem. at p. 6.

18

Railroads have also used preemption defensively as a protection against lawsuits in which plaintiffs have brought state law claims.  This, too, is an application of preemption against state action.  An award of damages pursuant to a state law claim provides another avenue by which a state may regulate private action.  *See Cipollone v. Liggett Group*, 505 U.S. 504, 521, 112 S. Ct. 2608, 2620, 120 L. Ed. 2d 407 (1992) ("'[State] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.'") (quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247, 79 S. Ct. 773, 780, 3 L. Ed. 2d 775 (1959)) (alteration in original); *Friberg v. Kan. City S. Ry.*, 267 F.3d 439, 444 (5th Cir. 2001) (holding the ICCTA may not "be circumvented by allowing liability to accrue under state common law, where that liability arises from a railroad's economic decisions").  In this paradigm, jurisdiction exists because Congress has expressly preempted all state law and made clear that federal law will provide an exclusive remedy.

Plaintiff's instant action, however, does not create federal jurisdiction via FRSA preemption because it is not seeking to enjoin conflicting state regulation or defend against a state action regarding a matter that has been completely preempted by federal law.  Plaintiff has not provided this Court with any evidence that its previous ruling, which dismissed plaintiff's claims brought pursuant to the FRSA, contained any manifest errors of law or fact.  Plaintiff's motion for reconsideration, therefore, must be denied.

## III.  Rayborn Action

The consolidated action filed by Jerry Rayborn requires a separate preemption analysis. In his action, Rayborn relies on state law and seeks equitable relief against NOGCR for its

19

interference with his property and the disputed crossings.[38]  Rayborn seeks injunctive relief

pursuant to state law to prevent NOGCR from removing or barricading the two private crossings

on his property, from interfering with access from his property to Louisiana Highway 23, and

from destroying the existing timbers and vehicular approaches to the original grade crossings.[39]

NOGCR removed this case and argues that the ICCTA preempts Rayborn's state law claims.[40]

Here, NOGCR's attempts to use preemption defensively against Rayborn, and the Court will

have jurisdiction if preemption applies.  *See, e.g.*, *Friberg*, 267 F.3d at 443.

 As stated above, the Supremacy Clause of the United States Constitution provides

Congress with the power to preempt a state statute where it conflicts with federal law.  U.S.

Const. art. VI, cl. 2.  The United States Supreme Court, however, has instructed that this

preemption should only be effected where it is "the clear and manifest purpose of Congress."

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S. Ct. 1146, 1152, 91 L. Ed. 1447 (1947).

"Preemption under the Supremacy Clause of the federal Constitution may arise in several ways,

i.e., (1) express preemption where the intent of Congress to preempt state law is clear and

explicit; (2) field preemption where state law intrudes in an area that Congress has reserved for

federal jurisdiction; and (3) conflict preemption, where enforcement of state law cannot be

accomplished while simultaneously complying with federal law."  *Friberg*, 267 F.3d at 442

(citing *English v. Gen. Elec. Co.*, 496 U.S. 72, 110 S. Ct. 2270, 110 L. Ed. 2d 65 (1990)).

 The ICCTA, which became effective in 1996, created the Surface Transportation Board

---

[38]Civ. Action No. 06-62, Rec. Doc. No. 1-1, pp. 18-19.

[39]Civ. Action No. 06-62, Rec. Doc. 1-1, p. 18.

[40]Civ. Action No. 06-62, Rec. Doc. 1-1, pp. 3-5.

("STB") to perform regulatory functions previously performed by the Interstate Commerce Commission.  *Id.*  Section 10501 of the ICCTA contains a clause that vests in the STB exclusive jurisdiction over

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State.

49 U.S.C. § 10501(b).  The statute explains that "[e]xcept as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law."  *Id.*  Because of this explicit language, the Court will first focus on the plain wording of the statute.  *See Easterwood*, 507 U.S. at 664, 113 S. Ct. at 1737.

Rayborn's complaint raises issues of Louisiana property law; he claims that NOGCR's actions and threats regarding the crossings on his property are "in derogation of and contrary to [his] vested property rights . . . and contrary to the legal obligations to [sic] owed to him as the title owner of an enclosed estate by the alleged holder of no more than a limited personal servitude."[41]  Certainly, the language of the ICCTA provides no indication that Congress intended a statue governing railroads to preempt the fundamental rights granted by state property law.  Section 10501(b) relates to the construction and operation of railroad lines and their economic regulation; despite the broad application of ICCTA preemption, the plain language of § 10501(b) does not substantially subsume state property law.

---

[41]Civ. Action No. 06-62, Rec. Doc. No. 1-1, p. 16.

In *Louisiana v. Sprint Communications Co.*, 892 F. Supp. 145 (M.D. La. 1995), the plaintiffs sued in state court to assert their property rights over the defendants' installation of fiber optic transmission lines on their property.  The defendants had been granted permission by two railroads that held rights-of-way across the plaintiff's property.  *Id.* at 146.  The court rejected the defendants' attempt to remove the case to federal court on the basis of complete preemption.  Recognizing that state law regulating railroads was preempted by federal law, the court noted that "the crux of the controversy at bar is not over the regulation of the 'train itself' but over the real rights of Louisiana property owners."  *Id.* at 149.  In one trenchant passage, the court reasoned that

> While the Congress has extensively provided for the regulation of railroads in certain areas, there is no indication that the Congress . . . sought to somehow impair state law property rights pertaining to servitudes. Moreover, the court cannot comprehend how the application of state property law in this area would interfere with the federal scheme of railroad safety and rate regulation.
>
> This court is not at all convinced that the Congress intended to preempt private state law regulating the rights of owners of immovable property in Louisiana by federal statutes which regulate railroads. Such legislation, if enacted, would present serious Fifth Amendment problems regarding the taking of private property without just compensation and would constitute a radical departure from prior congressional measures.

*Id.* at 150; *see also Fla. East Coast Ry. Co. v. City of West Palm Beach*, 266 F.3d 1324, 1332, 1339 (11th Cir. 2001) (holding that "existing zoning ordinances of general applicability, which are enforced against a private entity leasing property from a railroad" are an "exercise of traditionally local police power . . . [and] entitled to an assumption of no preemption when evaluated pursuant to the Supremacy Clause").  The Court agrees with this conclusion and holds that Rayborn's disputed property rights relating to the crossings in question are a matter for the

Louisiana courts.[42]

## IV.  Defendants' Counterclaims and Third-Party Complaints

Defendants' counterclaims and third-party complaints are also outstanding.  None of these counterclaims and third-party complaints appear to raise issues that give rise to independent grounds for jurisdiction.  *See Kuehne & Nagel v. Geosource, Inc.*, 874 F.2d 283, 291 (5th Cir. 1989) ("The dismissal of a plaintiff's complaint for lack of jurisdiction requires dismissal of a defendant's counterclaim unless the counterclaim presents independent grounds of jurisdiction.  However, if a compulsory counterclaim rests on an independent ground of federal jurisdiction, it may be adjudicated despite the dismissal of the plaintiff's complaint.").  Therefore, defendants' counterclaims and third-party complaints must be dismissed as well.

Accordingly,

**IT IS ORDERED** that the motion to dismiss filed on behalf of defendants Barrioses, Kaliszeskis, Millers, Rayborn, and Tillotsons, and Gainey,[43] the motion to dismiss filed by defendant Furniture Mart,[44] and the motion to dismiss filed by defendants Treadways, Nelsons, Woodalls, Koens, and Riddle[45] are **GRANTED**, and plaintiff's complaint for permanent injunction and declaratory judgment is **DISMISSED WITH PREJUDICE**.

---

[42]The *Sprint* court noted that the case before it was "not concerned with railroad safety, traffic, or rate-making or some other such typically regulated railroad activity."  892 F. Supp. at 149.  The Court recognizes that if the state court vindicates Rayborn's alleged right to these crossings pursuant to Louisiana property law, these crossings may later present issues falling within the preemptive scope of the FRSA or the ICCTA.  Such issues are not before the Court at this time, and the Court expresses no opinion as to the preemption of any state law claims related to the safety or economic regulation of the disputed crossings.

[43]Rec. Doc. No. 129.

[44]Rec. Doc. No. 162.

[45]Rec. Doc. No. 194.

**IT IS FURTHER ORDERED** that the motion of plaintiff, NOGCR, requesting that the Court reconsider its previous dismissal of plaintiff's claims pursuant to the FRSA or, in the alternative, grant plaintiff a new trial,[46] is **DENIED**.

**IT IS FINALLY ORDERED** that the claims of Jerry Rayborn are **REMANDED** to the 25th Judicial District Court for the Parish of Plaquemines, Louisiana.

New Orleans, Louisiana, September  14th  , 2006.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[46]Rec. Doc. No. 158.